PHILLIP A. TALBERT
United States Attorney
ROSS PEARSON
DAVID SPENCER
CAMERON L. DESMOND
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROSELLE CIPRIANO,<br><br>Defendant. | CASE NO. 2:19-CR-00035-DAD<br><br>PLEA AGREEMENT<br><br>DATE:<br>TIME:<br>COURT: Hon. Dale A. Drozd |

## I. INTRODUCTION

### A. Scope of Agreement

The indictment in this case charges the defendant with one count of conspiracy to distribute, manufacture, and possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One), one count of distribution of at least 50 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count Two), two counts of distribution of at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Counts Three and Four), one count of possession with intent to distribute at least 500 grams of a mixture and substance containing a detectable

amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Count Five), and one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count Six). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the indictment. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

The defendant will plead guilty to Count One of the indictment. Count One charges conspiracy to distribute, manufacture, and possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea, attached hereto as Exhibit A, are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that she will not be allowed to withdraw

her plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Sentencing Recommendation

The defendant and her counsel may recommend whatever sentence they deem appropriate.

### C. Special Assessment

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.

### D. Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws her plea, or tries to withdraw her plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or

all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### III.     THE GOVERNMENT'S OBLIGATIONS

#### A.     Dismissals

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending indictment. The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in II.D (Defendant's Violation of Plea Agreement) and VII.B (Waiver of Appeal) herein.

#### B.     Recommendations

##### 1.     Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for her offense, including the application of the mandatory statutory

///

minimum term, as determined by the Court. The government may recommend whatever it deems appropriate as to all other aspects of sentencing.

        2.    <u>Acceptance of responsibility</u>

The government will recommend a two-level reduction (if the offense level is less than 16) in the computation of the defendant's offense level if she clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

    **C.**    **Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

        **IV.**    **ELEMENTS OF THE OFFENSE**

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

As to Count One, conspiracy to distribute, manufacture, and possess with intent to distribute at least 500 grams of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1):

    1.    Beginning on or about no later than June 14, 2018, and continuing until on or about February 7, 2019, there was an agreement between two or more persons to distribute, manufacture, and possess with intent to distribute methamphetamine; and

    2.    the defendant joined in the agreement knowing of its purpose and intending to help

accomplish that purpose.

The defendant fully understands the nature and elements of the crime charged in the indictment to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

## V.   MAXIMUM SENTENCE

### A.   Maximum penalties

The maximum sentence the Court can impose on Count One, conspiracy to distribute, manufacture, and possess with intent to distribute at least 500 grams of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), is at least ten years and up to life in prison, a fine of $10 million dollars, a term of supervised release of at least five years up to life, and a special assessment of $100. Count One carries a ten-year mandatory minimum sentence, absent a motion by the government for reduction pursuant to 18 U.S.C. § 3553(e).

In addition, the defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21 U.S.C. § 862.

### B.   Violations of Supervised Release

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to five years of additional imprisonment.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further

///

understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

## VII. WAIVERS

### A. Waiver of Constitutional Rights

The defendant understands that by pleading guilty, she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on her behalf; (f) to confront and cross-examine witnesses against her; and (g) not to be compelled to incriminate herself.

### B. Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea, however, to give up the right to appeal any aspect of the guilty plea, conviction, and the sentence imposed in this case. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these two circumstances occur infrequently and that in all other cases, this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence imposed in this case.

///

Notwithstanding the agreement in paragraph III.A (Dismissals) above, that the government will move to dismiss counts against the defendant, if the defendant ever attempts to vacate her plea, dismiss the underlying charges, or modify or set aside her sentence on any of the counts to which she is pleading guilty, the government shall have the rights set forth in paragraph II.DD (Defendant's Violation of Plea Agreement) herein.

### C. Impact of Plea on Defendant's Immigration Status

The defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including offenses to which the defendant is pleading guilty. The defendant and her counsel have discussed the fact that the charges to which the defendant is pleading guilty is an aggravated felony, or a crime that is likely to be determined to be an aggravated felony under 8 USC § 1101(a)(43), and that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, it is virtually certain that defendant will be removed. Indeed, because the defendant is pleading guilty to conspiracy to distribute and manufacture methamphetamine under 21 U.S.C. §841(a)(1), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including her attorney or the district court, can predict to a certainty the effect of her conviction on her immigration status. The defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

### VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

///

///

///

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 10-5-23

STEVE WHITWORTH
Counsel for Defendant

### B. Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 10·5·2023

ROSELLE CIPRIANO, Defendant

### C. Attorney for the United States

I accept and agree to this plea agreement on behalf of the government.

Dated: 10/5/2023

PHILLIP A. TALBERT
United States Attorney

By:
ROSS PEARSON
Assistant United States Attorney

# EXHIBIT "A"
## Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

On June 14, 2018, in Vallejo California, Rafael RUIZ, sold an undercover agent with the Drug Enforcement Administration (DEA) approximately 1,000 pills in the shape of the Kool-Aid Smiling Pitcher and between 50 and 100 pills in the shape of Donald Trump's Face. RUIZ told the undercover agent that all of the pills were the same substance, but with different "stamps." RUIZ also told the undercover agent that he could obtain Xanax and Oxycodone from the same source who provided him the methamphetamine pills. RUIZ's source was the defendant, Roselle CIPRIANO, and her husband and co-defendant, Henry BENSON.

RUIZ and the undercover agent agreed to conduct another drug deal on July 3, 2018 in Vallejo. During recorded calls setting up the deal, RUIZ told the undercover agent that he had counterfeit Xanax available in 1,000-count quantities. At 11:00 a.m. on the July 3, 2018, RUIZ told the undercover agent during a recorded call that he would contact his source to get the pills and meet the undercover agent at 1:00 p.m. to sell the pills. RUIZ then called BENSON's phone number.

At 1:00 p.m. on July 3, 2018, RUIZ sold the undercover agent approximately 2,000 pills (915 gross grams) for $3,000 in the following colors and shapes: yellow Tesla emblem, yellow Donald Trump's face, and blue Minions. These pills contained methamphetamine.

During this recorded meeting, RUIZ told the undercover agent that his source manufactured the methamphetamine pills and that his source could provide RUIZ with 20,000 pills on a "front" without initial payment. Also during this meeting, RUIZ called his source, BENSON, in the presence of the undercover agent. BENSON could be heard on the line stating that the counterfeit Xanax pills could be ready in a few days.

On July 27, 2018, RUIZ and the undercover agent engaged in recorded calls and text messages, during which RUIZ agreed to sell the undercover agent 2,000 counterfeit Xanax pills. RUIZ told the undercover agent that the pills were being supplied by the same source.

On July 27, 2018, agents established surveillance at RUIZ's residence and the defendant and

PLEA AGREEMENT                                      A-1

BENSON's residence. The undercover agent called RUIZ to inform him he was on his way to meet him, and RUIZ responded that he was calling his source to obtain the pills. RUIZ immediately called BENSON's phone number. Shortly thereafter, BENSON left his residence and drove to RUIZ's residence to deliver RUIZ the drugs. RUIZ then called the undercover agent and said he was ready to meet. RUIZ then sold the undercover agent 2,000 fake Xanax pills. The pills contained methamphetamine. The defendant, CIPRIANO's, fingerprint was on the bag containing the methamphetamine pills.

During this recorded meeting, the undercover agent said that he had additional money to purchase 800-900 pills. RUIZ said he would call his source to see if they were available. RUIZ again called BENSON. RUIZ then left and met BENSON, who handed RUIZ additional pills to sell the undercover agent. When RUIZ returned to meet with the undercover agent, he said that he had just obtained the pills from his source of supply. These additional pills contained methamphetamine.

On September 4, 2018, law enforcement searched RUIZ's residence and found approximately 3,000 pills (695 gg) bearing the Snapchat and minion emblem. These pills contained methamphetamine.

On February 7, 2019, agents executed a search warrant at the defendant and BENSON's residence inside an elder care facility in Vallejo. In the defendant's bedroom, under the defendant's bed, they found approximately 31 pounds of pills in shapes consistent with the pills sold by RUIZ to the undercover agent. Most of these pills were found by the DEA lab to contain methamphetamine. They also found approximately 17 pounds of powders used in the manufacture of the methamphetamine pills and pill dies (stamps) used for pressing the pills. The defendant was in the bedroom on the bed when the search warrant was executed.

In a room a few feet from the defendant's bedroom, agents found a pill press used for manufacturing the pills.

During the search of the residence, agents found paperwork showing that the defendant had leased a public storage rental unit in Vacaville, California. Inside the storage unit leased by the defendant were five additional pill presses, hazmat clothing, and a bucket of powder used for manufacturing pills.

The Customs and Border Patrol Tactical Analytical Unit identified a P.O. box registered to the

defendant. The defendant's P.O. box received the following international imports in 2018 indicative of pill manufacturing:

    1.    One shipment from a Canadian Company, Test Kits Plus. Test Kits Plus is a distributer of narcotics test kits, to include kits for MDMA, Opiates, and Fentanyl.

    2.    Four shipments, totaling over 25 kilograms of "Sports Supplement," from the British company "Blackburn Distributions." Blackburn Distributions is a distributor of sports supplements and pill production ingredients, including microcrystalline cellulose, caffeine powder, and magnesium stearate, which are binding agents for pill manufacturing.

I, Roselle Cipriano, being fully informed of my rights, adopt this factual basis as my own true statement. Specifically, I admit that I agreed and conspired with Henry BENSON and others to manufacture and distribute methamphetamine, and that I and my co-conspirators engaged in the conduct described above in furtherance of that conspiracy.

Dated: 10·5·2023

ROSELLE CIPRIANO, Defendant